UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARGARITA ROSALES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 1131 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| MENARD, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

After tripping over a shopping cart with lumber sticking out of its bottom rack at one of Defendant Menard, Inc.'s ("Menards") stores, Plaintiff Margarita Rosales filed this action against Menards, alleging that Menards acted negligently in creating the dangerous condition that caused her fall. Menards has filed a motion for summary judgment. Because Menards did not have notice of the tripping hazard, Rosales cannot establish her negligence or premises liability claims and so the Court enters judgment for Menards.

## BACKGROUND[1]

On July 12, 2015, Rosales was shopping at the Menards store at North Avenue and Kostner Avenue in Chicago, Illinois. While looking at merchandise displayed on shelves in a lumber aisle, she stumbled over wood protruding from a shopping cart and fell to the ground. She struck the ground with both knees and her left hand. Prior to her fall, Rosales had not seen the shopping cart and instead only noticed it as she fell. The two-by-four pieces of wood were on the bottom rack of the shopping cart. After she fell, Rosales did not see anyone in the area

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts. All facts are taken in the light most favorable to Rosales, the non-movant.

around the cart. She does not know how long the cart had been there, who put the cart there, or how long the wood had been on the bottom of the cart.

After Rosales fell, Baltazar Rosales, Rosales' husband, walked through the aisles to find the person to whom the cart belonged. He eventually found a woman with the cart, who at that time was about twenty to forty feet from the cashiers. This woman claimed the cart as her own. Baltazar observed between four and six two-by-fours, measuring approximately ten feet in length, on the bottom of the woman's cart. He estimated that the wood extended past the front and back of the cart by about four feet in each direction and extended farther in the front.

The Menards store at issue carried lumber, including two-by-fours, both inside and outside of the store. There is a cart corral off the main aisle where the two-by-fours are staged, with other cart corrals located by the garden center entrance and near the lumber aisles. The lumber aisle corrals offer rail carts, panel carts, and flat carts. Menards does not provide instructions as to which carts should be used for specific items and no signs prohibit using shopping carts to transport lumber. As a self-service store, Menards does not instruct its employees to counsel or recommend certain carts for specific lumber. And placing two-by-fours in the bottom rack of a shopping cart does not necessarily constitute a safety issue because the cart can support the weight. It also does not constitute a tripping hazard where its placement is no different than when any other style cart is used. This is because Menards does not have ten foot carts that would prevent two-by-fours from sticking out from the carts. Menards does not have flags to help customers identify that boards are sticking out on carts.

Charles Herring, Menards' first assistant general manager at the North and Kostner store on the date of the fall, testified that he constantly patrolled the store, taking care of any safety issues as they arose. Menards' general regulations require employees to report safety issues and

address them as they arise. Although Menards does not have a specific inspection schedule, all Menards employees are trained to address any unsafe issues or ensure management learns of them. On the day Rosales fell, Herring had no knowledge of any unattended or abandoned carts with lumber in them before Rosales' accident. He also does not know of any other Menards employees who knew of such carts. Although employees regularly patrol the store, Herring does not know how many employees inspected the two-by-four aisle in the store on the day Rosales fell.

Kevin Shelton was the second assistant in the building materials section of the Menards store, where six or seven people typically worked on any given day. Shelton had not previously seen a customer place two-by-fours at the bottom of a shopping cart. But had he seen two-by-fours placed in a cart in that way, he testified that he was not sure he would have said something to a customer about their placement. Daniel Oszak is a full-time Menards employee who also works in the building materials section. Like Shelton, he had not previously seen anyone place two-by-fours at the bottom of a shopping cart. On the day in question, Oszak did not notice any unattended shopping carts with lumber on the bottom. He testified that as long as a cart was not obstructing anything, team members did not typically attend to it. According to Oszak, if a cart blocked the way, employees generally moved it to the side. Robert Johnson, another team member in the building materials section, testified that he has seen customers with two-by-fours in shopping carts. But he has never stopped or advised a customer to switch carts when transporting lumber and has not received any training instructing him to do so. On the day of the incident, he was not aware of any unattended shopping carts with lumber in them.

Lidia Berrios was the first assistant to the front end manager on July 12, 2015, with responsibility for investigating and reporting incidents that occurred at the store. Berrios did not

work in the building materials or hardware sections and instead remained at the front of the store unless special circumstances arose. Rosales came to the front desk and told Berrios that she tripped over lumber placed at the bottom of a shopping cart. Although Berrios could not recall whether she was trained to direct customers to use specific carts for specific products, she testified that, if a customer put a two-by-four on the bottom of a steel cart, she was trained to help the customer perhaps switch to a more appropriate cart for safety purposes. She did not receive specific training on lumber placed on the bottom of a shopping cart. Berrios testified that employees did receive training more generally on avoiding tripping hazards by clearing the aisles and evening out products. Berrios believes that two-by-fours placed at the bottom of a shopping cart constitute a tripping hazard because some part of the two-by-fours stick out from both ends of the cart.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v.*

4

*Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

Although Rosales technically asserts two separate claims for negligence and premises liability in her complaint, the parties treat the claims together, focusing on whether Menards had notice of the dangerous condition at issue. To succeed on her negligence claim, Rosales must establish that (1) Menards owed her a duty, (2) Menards breached that duty, and (3) Menards' breach proximately caused her injury. *Rhodes v. Ill. Cent. Gulf R.R.*, 665 N.E.2d 1260, 1267, 172 Ill. 2d 213, 216 Ill. Dec. 703 (1996). Under a premises liability theory, Rosales must establish: "(1) A condition on the property presented an unreasonable risk of harm to people on the property; (2) The defendant knew or in the exercise of ordinary care should have known of both the condition and the risk; (3) The defendant could reasonably expect that people on the property would not discover or realize the danger or would fail to protect themselves against such danger; (4) The defendant was negligent in one or more ways; (5) The plaintiff was injured; and (6) The defendants negligence was a proximate cause of the plaintiff's injury." *Hope v. Hope*, 924 N.E.2d 581, 584, 398 Ill. App. 3d 216, 338 Ill. Dec. 375 (2010). A business, such as Menards, owes an invitee, including Rosales, a duty to maintain its premises in a reasonably safe condition. *See Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017). Menards argues that Rosales cannot prevail on her claims because she cannot establish that Menards had actual or constructive notice of the allegedly dangerous condition.

Menards may be liable if it had actual or constructive notice of the shopping cart with the protruding two-by-fours. *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014).

"To prove that the defendant, rather than a third party, created the dangerous condition, Illinois courts require a plaintiff to (1) demonstrate that the foreign substance was related to the defendant's business, and (2) offer 'some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises.'" *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016) (quoting *Zuppardi*, 770 F.3d at 650)). Rosales focuses solely on whether Menards' policies and procedures allowed for the creation of the tripping hazard—the cart protruding with lumber—and so the Court does the same.

Specifically, Rosales argues that Menards made certain policy decisions that created consistently dangerous tripping hazards throughout its store by allowing customers to transport two-by-fours from the sales floor to cashiers. She contends that by allowing customers to transport two-by-fours from the sales floor to the cashiers but not having carts that could fully accommodate these two-by-fours, Menards should have known it was creating potential tripping hazards. She claims Menards further contributed to these hazards by failing to provide signage about the dangers of transporting two-by-fours and by not providing flags or warnings to customers to watch for two-by-fours protruding from carts.

Rosales essentially argues that Menards should not have allowed customers to transport two-by-fours on their own and that, by allowing them to do so, Menards should be charged with knowledge of any tripping hazards in its stores that resulted from customers transporting lumber. But in arguing that Menards' policies placed Menards on constructive notice of the hazard at issue in this case, Rosales urges a heightened standard of "continuous monitoring and patrolling of a store's safety conditions that [the Seventh Circuit] and Illinois courts have summarily

6

rejected." *Zuppardi*, 770 F.3d at 652; *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 604 (7th Cir. 2001) ("Satisfaction of the . . . duty of inspection and clean up[ ] does not require continuous patrolling of the aisles."); *Gutterman v. Target Corp.*, 242 F. Supp. 3d 695, 703–04 (N.D. Ill. 2017) (finding that requiring a retailer to patrol various items "that could cause harm if used improperly by customers while browsing" was too high of a burden). Because such a high standard does not apply here and cannot create a genuine issue of fact as to notice on its own, under her pattern or procedure theory, Rosales must come forward with additional evidence to show a pattern of incidents of the type at issue here that would provide Menards with notice that its policy of allowing two-by-fours to be transported on the bottom of shopping carts creates tripping hazards. *See Piotrowski*, 842 F.3d at 1040 (in finding defendant entitled to summary judgment, explaining that "there was no evidence of any other incident involving rocks in the parking lot" or "any evidence of recurring escape of river rock from the planter onto the parking lot pavement or of any prior complaint of loose rock in the parking lot"); *Kozyra v. Dollar Tree Stores, Inc.*, No. 15-cv-8605, 2017 WL 2958103, at *7 (N.D. Ill. July 11, 2017) (even accepting that shopping baskets were commonly left on the floor of the store, plaintiff needed to demonstrate that the defendant did not adequately respond to these baskets to establish constructive notice). Here, the record contains no evidence of any prior complaints concerning two-by-fours being transported in any of the carts provided by Menards or any prior accidents involving shopping carts at this or any other Menards store, caused by two-by-fours or otherwise. Additionally, the Menards employees deposed in this case all indicated that they followed procedures in monitoring the aisles and removing any obstructions. None of them indicated seeing unattended carts with lumber on the day of the incident. Therefore, without a basis to find a pattern of dangerous conditions that Menards did not address, the Court cannot conclude that

Menards had constructive notice of the tripping hazard in this case. *See Kozyra*, 2017 WL 2958103, at *7–8 (finding that defendant did not have constructive notice of tripping hazard posed by shopping baskets where plaintiff did not offer evidence of other trip and fall incidents and evidence showed that the store was frequently inspected). This means Rosales cannot establish an essential element of her claims, warranting the entry of summary judgment in Menards' favor.

## CONCLUSION

For the foregoing reasons, the Court grants Menards' motion for summary judgment [42]. The Court enters judgment for Menards on Rosales' complaint and terminates this case.

Dated: May 21, 2018

_____
SARA L. ELLIS
United States District Judge